Maudie F. MARTIN, Plaintiff,

v.

Jo Anne B. BARNHART,
Commissioner of Social
Security, Defendant.

No. CV 303–202.

United States District Court,
S.D. Georgia,
Dublin Division.

Feb. 6, 2004.

Daryl J. Morton, Macon, GA, for Plaintiff.

Kenneth C. Etheridge, U.S. Attorney's Office, Augusta, GA, for Defendant.

## ORDER

BOWEN, Chief Judge.

In the captioned case, Plaintiff appeals the decision of the Commissioner of Social Security (the "Commissioner") that denies her application for Social Security Disability Insurance Benefits and Social Security Supplemental Income Benefits. Following Plaintiff's second hearing before an Administrative Law Judge ("ALJ"), her claim for benefits was denied on May 19, 2001.[1] Plaintiff lists the following three errors in the ALJ's adverse decision: 1) Plaintiff claims that the ALJ erred in rejecting the medical opinions of two of her treating physicians that her condition met the requirement of the 2.07 listing, a determination that precluded her from being declared automatically disabled for social security benefits; 2) Plaintiff claims that the ALJ relied upon improper evidence when he proffered an article from a medical journal as a *post-hearing* evidentiary exhibit in the case,[2] and then did not grant Plaintiff's request for a supplemental hearing or to subpoena the authors of the

---

1. The unfavorable ruling of May 19, 2001 was the second adverse decision from the same ALJ. Plaintiff's claim was initially denied on June 24, 1998 but was remanded to the ALJ by the Appeals Council in a decision dated March 8, 2000. The Appeals Council denied Plaintiff's request to review the May 19, 2001 adverse decision of the ALJ.

2. After the second hearing in the case on December 1, 2000, the ALJ informed Plaintiff that he was adding an article from the *Journal of the American Medical Association* entitled, "Physician Manipulation of Reimbursement Rules for Patients: Between a Rock and a Hard Place." (Ex. 14E, R. at 256–71.) Plaintiff's counsel timely objected to the placement of this article in the record on relevancy grounds.

article for examination; and 3) Plaintiff claims the ALJ improperly held her failure to amend her onset date against her in his ruling.

In response to Plaintiff's allegations of error, Defendant has moved for entry of judgment pursuant to 42 U.S.C. § 405(g),[3] specifically seeking remand of the cause to allow the ALJ to conduct a supplemental hearing on the admission of the subject journal article. Plaintiff objects to the limited scope of the requested remand.

■ I concur with Plaintiff's contention that the Commissioner's suggested remand is too narrow. Indeed, I am troubled by the inclusion of the journal article in the record. (*See* R. at 256–71.) The journal article examines the frequency with which physicians manipulate reimbursement rules to obtain insurance coverage for services they perceive as necessary. (*Id.* at 256.) According to the article, 39% of physicians reported using at least one of three enumerated tactics in the prior year. (*Id.*) The authors concluded that a "sizeable minority of physicians report manipulating reimbursement rules so patients can receive care that physicians perceive is necessary." (*Id.* at 256–57.) The article does not directly relate to Plaintiff's alleged disability, Meniere's disease, or to her medical assessment or treatment. Moreover, it does not discuss physicians who offer opinions about the impact of medical conditions on their patients for purposes of social security disability claims.

In response to Plaintiff's counsel's objection to inclusion of the article on relevancy grounds, the ALJ wrote that the article did not ultimately influence his decision. Instead, he stated he included the article

to foment discussion and recognition of the growing problem of physicians who manipulate or exaggerate evidence in order to benefit their patients. While the topic now seems to be one for open discussion within medical circles, it should not escape the attention of jurists, as well. In that case, it does appear that both Dr. Heard and Dr. Graham [Plaintiff's treating physicians] found themselves "between a rock and a hard place" when pressed by claimant and her attorney to make extra-medical statements in support of her quest for Social Security disability status.

(Hearing Decision of May 19, 2001, R. at 25.)

A reasonable inference to be drawn from the inclusion of this article is that the ALJ was attempting to bolster his conclusion that the treating physicians exaggerated their opinions with regard to Plaintiff. Indeed, the crux of the ALJ's adverse decision rests upon his determination that the treating physicians' ultimate finding of a disability pursuant to the 2.07 listing is not supported by their own treatment records. In short, one may easily infer that the ALJ believes the treating physicians manipulated their opinions for the benefit of the patient, probably at the behest of Plaintiff and her attorney.

If the ALJ had this type of concern about the correctness, indeed the ethicality, of the treating physicians' opinions, not to mention the conduct of Plaintiff and her attorney, it should have been raised and explored in the evidentiary hearing or in a supplemental hearing. It was not. Instead, the ALJ waited until the written hearing decision, at a time when Plaintiff and her attorney could no longer defend themselves or the opinions of the treating physicians, to pontificate on his perceived

---

**3.** Under 42 U.S.C. § 405(g), this Court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

problem with the medical community and medical claims. This tactic does not accord an applicant the process she is due under administrative procedural law.

This is not to say that an ALJ is not permitted to reject the opinion of a treating physician if it is contrary to substantial evidence in the record. Indeed, the ALJ may have been well within his purview to reject the treating physicians' opinions in this case. However, the inclusion of a wholly irrelevant article in the record, together with the inflammatory remarks of the ALJ with respect to the article's application, taints the ALJ's findings with a stain of impropriety that I cannot ignore.

■ I also cannot ignore the following "admonition" made by the ALJ at the end of the evidentiary hearing on December 1, 2000:

ALJ: So—but, I want you to understand that I know you're a nice person and I'm going to try as hard to be fair to you. Now, I throw that—this out for a reason, Counsel, in that I want to encourage you to talk to [Plaintiff] and see if there's not some way that you might make it easier on a Judge that was wanting to do something nice for a nice person and—like [Plaintiff] in terms of getting her some benefits. Okay. And, you've got plenty of time to do that. You don't have to tell me today or anytime in the near future, but if you, for instance, you wanted to amend your onset date or take some other action that I had thought of, you can let me know when you send in Dr. Graham's records. Okay. Any questions about any of that?

Atty: No question, Your Honor.

ALJ: Do you understand what I'm saying, Ms. Martin?

Plaintiff: No, I did not.

ALJ: Okay. Well, talk to [your attorney]. He's been around the loop a couple of times. Maybe he can break it down for you.

(Tr. of Hearing on Dec. 1, 2000, at 34–35, R. at 132–33.)

I cannot state whether the ALJ intended to condition the award of benefits upon Plaintiff amending her claim in some way. The inference of such precondition is inescapable however. It is this appearance of impropriety that undermines the ultimate decision in the case. And, as in the case of the medical journal article, this exchange appears to have denied the applicant fair and due consideration of her claim.

In short, the conduct of the ALJ in this case cannot be condoned. Therefore, I cannot affirm the hearing decision denying Plaintiff's claim for benefits on the record before me. Nor can I be assured that Plaintiff's claim will receive fair consideration if remanded to the same ALJ. Accordingly, **IT IS ORDERED** that this case is **REMANDED** for an administrative hearing to be set expeditiously. The journal article, Ex. 14E, shall be struck from the record, thereby obviating the need for Plaintiff to call its authors for examination. IT **IS FURTHER OR-DERED** that the Commissioner assign a different ALJ to preside over the case. This ALJ shall revisit all issues in the case and take any steps necessary to make an informed decision on Plaintiff's claim of disability, including taking additional testimony or updated medical evidence. Upon the foregoing, Defendant's motion to remand the case [doc. no. 10] to the Commissioner is GRANTED for proceedings consistent with this Order.